**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| KEITH F. BELL Dr., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:24-cv-01692-TWP-KMB |
| | ) |
| BARTHOLOMEW CONSOLIDATED SCHOOL | ) |
| CORPORATION, | ) |
| TIMOTHY BLESS, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON PENDING MOTIONS**

This matter is before the Court on two motions: a combined Motion to Dismiss and Motion for Attorneys' Fees (Dkt. 26) filed by Defendant Bartholomew Consolidated School Corporation ("Bartholomew School"); and a combined Motion for Judgment on the Pleadings and Motion for Attorneys' fees (Dkt. 37) filed by Defendant Timothy Bless ("Bless"). *Pro se* Plaintiff Dr. Keith F. Bell ("Bell") initiated this action alleging breach of contract, direct copyright infringement, vicarious copyright infringement, and a Digital Millenium Copyright Act violation (Dkt. 1). For the reasons described below both Motions are **granted**.

## I.      BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss (and judgment on the pleadings), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Bell as the non-moving party. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

In 1981, Bell wrote a book entitled "Winning Isn't Normal" (the "Book") (Dkt. 1 at 4). The Introduction of the Book includes a passage titled "Winning Isn't Normal" (the "Win Passage").

*Id*. This title not only distills the essence of the book, but is the inspiration for and the basis of the book. *Id*. Bell obtained a copyright registration for the Book in 1989, and a copyright registration for the Win Passage in 2017. *Id*. Bell has made meaningful efforts to create a market for his intellectual property and to protect and enjoy the copyrights and he has created, marketed, and sold works derived from Winning Isn't Normal, such as posters and t-shirts. *Id*. at 5.

Bartholomew School is a public school system in Columbus, Indiana. *Id*. at 2.  At the time relevant to this action, Bless was employed by Bartholomew School as a faculty member who taught health and physical education classes and coached a high school football team at one of its schools. *Id*. In January 2020, Bell, Bartholomew School and Bless entered into a Settlement Agreement (the "Agreement") to resolve a dispute related to the use of Bell's intellectual property by Bartholomew School and Bless.[1] *Id*. at 3. Pursuant to the Agreement, Bartholomew School and Bless would desist from further use of Bell's intellectual property without first obtaining a license from Bell. *Id*.

On March 20, 2022, Lane Kiffin, a college football coach in Mississippi, posted to his X account (the social media platform formerly known as Twitter), a photocopy of the Win Passage. *See Bell v. Kiffin*, No. 3:24-cv-231, 2024 WL 5125159, at *2 (N.D. Miss. Dec. 16, 2024). Lane Kiffin did not otherwise offer commentary or elaborate upon its content in any manner. *Id*. Lane Kiffin's post did not attribute the excerpt to Bell.

On March 23, 2022, Bless reposted Lane Kiffin's original post to his personal  X account which Bless controls and maintains (Dkt. 1 at 6). Bless provided no commentary on Lane Kiffin's post or otherwise connected his repost to Bartholomew School  (Dkt. 4 at 1). Bless' X account had

---

[1] In 2019 Bell filed an action *Bell v. Bartholomew Consolidated School Corporation and Timothy Bless*, Case No. 1:19-cv-03308-JRS-TAB (Dkt. 16, Dkt. 16-1), against the same Defendants alleging infringement of the Book, Winning Isn't Normal, which the parties settled and the action was dismissed.

1,093 followers at the time (Dkt. 1 at 3). Neither Bartholomew School nor Bless was authorized to use Bell's intellectual property. *Id*. at 7.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633; *Cozzi Iron & Metal*, 250 F.3d at 574 (similar standard for dismissal of a counterclaim). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

Moreover, Federal Rule of Civil Procedure 12(c) permits the moving party to move for judgment on the pleadings after the pleadings are closed and before trial. Rule 12(c) motions are analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007). "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *United Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). When deciding a motion for judgment on the pleadings or motion to dismiss, the court may consider only "the matters presented in the pleadings" and must consider them in the light most favorable to the nonmovant. *Id.*

The pleadings "consist of the complaint, the answer, and any instruments attached as exhibits." *Housing Auth. Risk Retention Grp. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004). When considering a judgment on the pleadings or motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached

3

to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id*.; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.   <u>DISCUSSION</u>

#### A.   <u>Bell's Prior Litigation</u>

As an initial matter, the Court finds it necessary to point out that this case type is not unique to Bell. "Between 2006 and 2017, Bell filed over 25 copyright lawsuits in federal courts across the country. Most of the defendants are public schools or nonprofits, who published the Win Passage on social media. *See Bell v. Eagle Mountain Saginaw Independent Sch. Dist.*, 27 F.4th 313, 319 (5th Cir. 2022). Since writing the Book, Bell has been described as "not the typical copyright plaintiff seeking 'a fair return for [his] creative labor.'" *Id*. at 326 (quoting *Twentieth Cent. Music*

*Corp. v. Aiken*, 422 U.S. 151, 156 (1975)) (alteration in original).  Instead, he "has a long history of suing public institutions and nonprofit organizations over *de minimis* uses of his work." *Id.* (citing *Bell v. Worthington City Sch. Dist.*, No. 2:18-CV-961, 2020 WL 2905803, at *3 (S.D. Ohio June 2, 2020) (tweet by a high-school basketball coach); *Bell v. Llano Indep. Sch. Dist.*, No. 6:19-CV-265, 2020 WL 5370591, at *1 (W.D. Tes. Feb. 13, 2020) (same); *Bell v. Oakland Cmty. Pools Project, Inc.*, No. 19-CV-01308, 2020 WL 4458890, at *1 (N.D. Cal. May 4, 2020) (tweet by a non-profit aquatics center for disadvantaged youth); *Bell v. Granite Sch. Dist.*, No. 2:19-CV-00209, 2019 WL 5319322 (D. Utah 2019) (reading the Passage at a public school's sports awards banquet)). Bell was further described as "a serial litigant, who makes exorbitant demands for damages in hopes of extracting disproportionate settlements." *Id*.

The Eastern District of Wisconsin recently chastised Bell's behavior stating:

In fact, Bell's behavior is akin to that of a copyright "troll": one who "bring[s] strategic infringement claims of dubious merit in the hope of arranging prompt settlements with defendants who would prefer to pay modest or nuisance settlements rather than be tied up in expensive litigation." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1097 (7th Cir. 2017). Bell, of course, could not possibly earn legitimate revenue by licensing his work to school coaches who wish to celebrate or inspire student athletes by retweeting [X] posts that reference the [Passage]. As noted above, the transaction costs with such licensing would be prohibitive. So Bell instead lies in wait and springs lawsuits on school districts whose employees retweet the [P]assage, hoping that Bartholomew School district will choose to settle rather than incur the costs of litigation. The Seventh Circuit has explicitly recognized that this kind of behavior is "far removed" from the goals of copyright law. *Id*.

*Bell v. Milwaukee Bd. of Sch. Directors*, No. 22-C-0227, 2022 WL 18276966, at *10 (E.D. Wisc. Dec. 21, 2022).

Disdain for Bell's behavior has not been limited to mere chastisement. Indeed, courts have found that Bell's behavior necessitated an award of attorney's fees against him including the Fifth Circuit deeming such an award as "an appropriate deterrent." *Eagle Mountain*, 27 F.4th at 326; *see*

5

*also Oakland Cmty. Pools Project*, 2020 WL 13695114, at *3, 7 (Stating that Bell's behavior "borders on extortionate," and awarding $120,046.85 in attorneys' fees under the Copyright Act after entering summary judgment against Bell on his copyright claim against a nonprofit serving underprivileged youth). Undeterred by the numerous reprimands, Bell has continued filing these lawsuits, *see* Complaint, *Keith F. Bell v. Solon Cmty. Sch. Dist.*, No. 3:24-00083 (S.D. Iowa Nov. 5, 2024), Dkt. 1.

Unfortunately, the case before the Court is no different.

**B.      The Merits of Bell's Claims**

Bell alleges the following claims: Count I: Breach of Contract; Count II: Direct Copyright Infringement (Against All Defendants); Count III: Vicarious Copyright Infringement (Against Bartholomew School Only); and Count IV: Digital Millenium Copyright Act Violation ("DMCA") (Dkt. 1). Bartholomew School moves for dismissal pursuant to Rule 12(b)(6) and Bless has moved for judgment on the pleadings pursuant to Rule 12(c). Because the Motions are analyzed under the same standard, *Pisciotta*, 499 F.3d at 633, the Court will analyze the Motions together for each of Bell's claims. In their briefing, Bartholomew School and Bless address the copyright and DMCA claims first before addressing the breach of contract claim. The Court will do the same.

   **1.  Count I: Direct Copyright Infringement**

Bell alleges that Bartholomew School and Bless violated 17 U.S.C. §§ 106 and 501 (Dkt. 1). "To state a claim for copyright infringement, [Bell] must show: (1) 'ownership of a valid copyright'; and (2) 'unauthorized copying' of the copyrighted work's 'original' elements. *Weller v. Flynn*, 312 F. Supp. 3d 706, 718 (N.D. Ill. 2018) (quoting *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012)). To satisfy the second element of his claim, Bell must show that Bartholomew School

6

and Bless "actually copied" his work. *Id*. (quoting *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017)).

Concerning Bartholomew School, Bell fails to allege any facts to show that Bartholomew School copied his work. In *Solon Cmty. Sch. Dist.*, the Southern District of Iowa concluded that Bell could not establish a copyright infringement claim against that school district when an employee of the school district reposted on their X account a post from another user containing the Win Passage. *See* Order on Motion to Dismiss, *Solon Cmty. Sch. Dist.*, No. 3:24-cv-00083, Dkt. 24. The Southern District of Iowa concluded that there was no inference that the school district was in on the employee's decision to repost the excerpt, that it appeared on any official social media account operated by the school district, or any other direct link to the school district. *Id*. at 7. The district court explained that the sole basis on which Bell sought damages from the school district is that one of its employees reposted an excerpt that was posted by a different individual. *Id*. The district court concluded that such allegations are insufficient to state a claim for copyright infringement against the school district. *Id*.

The facts of this case are virtually identical. Bless is a football coach at a Bartholomew School who reposted another user's post containing the Win Passage. There is no inference that Bartholomew School authorized such post or that Bartholomew School had any involvement in Bless' decision to repost something on his personal X account. The Southern District of Iowa's decision is well reasoned. Bell's allegations here, are insufficient to state a claim for copyright infringement against Bartholomew School.

As the Southern District of Iowa points out, this rationale is in line with other district court decisions concerning similar claims by Bell against institutional defendants where the alleged infringement occurred on an employee's personal social media account. *Id*. (citing *Bell v. Crawford*

*Indep. Sch. Dist.*, 6:19-CV-268, 2020 WL 5370592, at \*4 (W.D. Tex. Feb. 13, 2020) (rejecting claim where the school district "did not own or operate the Twitter account and therefore could not directly copy the copyrighted work."); *Llano Ind. Sch. Dist.*, 2020 WL 5370591, at \*4 (W.D. Tex. Feb. 13, 2020); *Bell v. Chicago Cubs Baseball Club, LLC*, No. 19-cv-2386, 2020 WL 550605, at \*3 (N.D. Ill. Feb. 4, 2020) (dismissing copyright infringement claim "because the amended complaint does not allege any facts suggesting that 'the Cubs' themselves created a copy of [p]laintiff's WIN passage.")). Accordingly, Bell's claim for direct copyright infringement against Bartholomew School fails.

Bell's claims against Bless fare no better. Bless argues that he is protected by the fair use doctrine (Dkt. 38). While the fair use doctrine is an affirmative defense, a court may dismiss a complaint if it "contains all the elements necessary to determine whether the affirmative defense applies[.]" *Milwaukee*, 2022 WL 18276966, at \*4 (citing *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)). The Copyright Act provides four factors that courts should consider when applying the fair-use doctrine: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. The four factors are not exclusive. *Brownmark*, 682 F.3d at 692. "All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994). The fair-use doctrine defense may succeed even if one or more factors favor the claimant. *See id.*; *Milwaukee*, 2022 WL 18276966, at \*4. Courts often give the fourth factor the most emphasis. *See Kienitz v. Sconnie Notion LLC*, 766 F.3d 756, 758 (7th Cir. 2014). The Court will address each factor in turn.

### a. **Purpose and Character of The Use**

The first factor considers "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). Courts generally weigh three "considerations" when evaluating this factor: (1) whether the allegedly infringing use is "transformative"; (2) good or bad faith; and (3) whether the use was commercial or noncommercial. *Milwaukee*, 2022 WL 18276966, at *4 (citing *Google LLC v. Oracle America, Inc.*, 593 U.S. 1, 27 (2021); *Eagle Mountain*, 27 F.4th at 321–22).

In assessing whether a use is transformative, a court determines whether the use "adds something new and important." *Google*, 593 U.S. at 29. The Seventh Circuit has expressed skepticism over the "transformative use" consideration. *See Kienitz*, 766 F.3d at 758. Regardless, here, there is no claim that Bless added something or altered the original work in any way. The repost simply reproduced the Win Passage verbatim.

The next consideration, good or bad faith, does not carry much weight in this case. The Supreme Court has "expressed some skepticism about whether bad faith has any role in a fair use analysis." *Google*, 593 U.S. at 32. Bell claims that this consideration weighs in his favor because "[t]here is a huge difference between an innocent infringer and an ignorant infringer." (Dkt. 39 at 5). Bell argues that had Bless performed a simple search of registered copyrights for the Book in the U.S. Government Copyright site, he would have discovered that Bell had registered his copyright. But if Bless' repost constituted fair use, then determining that Bell had registered the work would not have changed anything. *See Campbell*, 510 U.S. at 585 ("If the use is otherwise fair, then no permission need be sought or granted. Thus, being denied permission to use a work does not weigh against a finding of fair use.")

9

The third and final consideration is whether the use was commercial or noncommercial. This consideration clearly favors Bless (and Bartholomew School). As the Eastern District of Wisconsin concluded under virtually identical facts, "[i]t is obvious that [the coach] re[posted] the image of the . . . [P]assage to inspire, motivate, or cheer on his student athletes, rather than to profit or otherwise engage in commercial activity." *Milwaukee*, 2022 WL 18276966, at \*5. The Fifth Circuit concluded the same in one of Bell's prior cases stating, "it is hard to imagine how the school could derive a commercial benefit from that use." *Eagle Mountain*, 27 F.4th at 322.

Bell argues that the success of athletic departments and coaches depends on the success of its teams and thus, calling the use noncommercial is inappropriate (Dkt. 39 at 6). He contends that "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Id*. (quoting *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985)). Nonetheless, neither Bartholomew School  nor Bless stand to profit from Bless' reposting of another user's post of the Win Passage. Bless did not charge anyone for access to his X page or otherwise use it for commercial purposes. Moreover, the Win Passage itself is freely available online so Bless did not make anything available to his followers that was not already available for free to the world. Accordingly, the use was clearly to inspire or motivate Bless' student athletes.

### b.  <u>**Nature of The Copyrighted Work**</u>

The next factor "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586. This factor recognizes that "fair use is more likely to be found in factual works than in fictional works." *Stewart v. Abend*, 45 U.S.

207, 237 (1990). This factor also looks to whether the work is published, as "the scope of fair use is narrower with respect to unpublished works." *Harper*, 471 U.S. at 564. To determine this consideration, courts look to whether the work has been appropriated for its "expressive elements," rather than to disseminate "the underlying facts." *Eagle Mountain*, 27 F.4th at 323 (quoting *Harper & Row*, 471 U.S. at 563–64).

Construing the facts in favor of Bell as the Court is required to do at this stage of the litigation, this consideration slightly favors Bell. The Win Passage is "somewhat creative[,]" and contains "well-worn truisms" which "athletes will be familiar with." *Id*. Though this factor slightly favors Bell, it is generally considered the least important. *Id*.

c.  **Amount and Substantiality of The Portion Used**

The amount and use factor "examines whether the amount and substantiality of the portion used are 'reasonable in relation to the purpose of the copying.'" *Milwaukee*, 2022 WL 18276966, at *6 (quoting *Campbell*, 510 U.S. at 586). This factor favors Bless and Bartholomew School.

While Bell claims the Win Passage is the "heart" of the Book and he has copyrighted the Win Passage separately, the entire Win Passage is freely available online. As both the Eastern District of Wisconsin and the Fifth Circuit noted, "if an infringing use enables a viewer to see such a work which he had been invited to witness in its entirety free of charge, the fact that the entire work is reproduced . . . does not have its ordinary effect of militating against a finding of fair use." *Id*. (cleaned up); *see Eagle Mountain*, 27 F.4th at 324. Moreover, the Court agrees with the Eastern District of Wisconsin that the entire Win Passage is what is inspirational, so the copying of the entire Win Passage was reasonable in relation to the fair-use purpose of the copying. *Milwaukee*, 2022 WL 18276966, at *6.

> d. **Market Effects**

The final factor considers the effect of the use on the market for the original work. This factor is usually the most important. *Kienitz*, 766 F.3d at 758. The Seventh Circuit has asked "whether the contested use is a complement to the protected work (allowed) rather than a substitute for it (prohibited)." *Id*. at 758–59 (citing cases). This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (internal quotation marks and citation omitted). The inquiry "must take account not only of harm to the original but also of harm to the market for derivative works." *Id*. (quoting *Harper & Row*, 471 U.S. at 568).

Bell alleges that he "has suffered substantial monetary damages" because of Bless' reposting of Lane Kiffin's original post (Dkt. 1 at 10). In *Eagle Mountain*, the Fifth Circuit concluded there was no "plausible economic rationale to support Bell's assertion that widespread [posting on X] of the WIN passage would undermine the value of his copyright." 27 F.4th at 324. Indeed, the Fifth Circuit pointed out that, "[i]f anything, the properly attributed quotation of a short passage from [the Book] might bolster interest in the [B]ook; it is free advertising." *Id*. at 325. The Fifth Circuit explained,

> The same is true for merchandise. An online post is not a market substitute for a coffee mug. Viral sharing of the WIN Passage on [X] might enhance the notoriety and appeal of Bell's work, thereby increasing the incentive to purchase products displaying it. The opposite inference does not make sense: How would online references to the WIN Passage reduce the market for merchandise displaying it?

*Id*.

In his brief, Bell does not argue that Bless' infringement caused harm to the market for the Book or any other derivative works. Rather, he argues that if other people start infringing on his Book, the Win Passage, motivational posters, or t-shirts, then his market will be substantially diminished (Dkt. 39 at 11). But this argument is clearly not enough.

The Court agrees with the Fifth Circuit. Not only is Bell's claim focused solely on authorization of the use rather than the actual market effect of the use, but the allegation does not show how the reposting of another user's post of the Win Passage would negatively impact the market for Bell's copyright. Other district courts have reached the same conclusion of Bell's claims in similar situations. The District of Utah found that this factor favored a defendant because Bell's claim is "focus[ed] almost solely on the lack of authorization[,]" and without "any allegation that the quote negatively effected the potential market for or value of the copyrighted work, this factor also favors [the defendant]." *Bell v. Magna Times, LLC*, No. 2:18-cv-497, 2019 WL 1896579, at *5 (D. Utah Apr. 29, 2019). This is the case here as well.

### e.  **Fair Use Conclusion**

Having considered the relevant factors, the Court concludes that Bless' repost was a fair use of the Win Passage. The use was noncommercial and meant to inspire Bless' student athletes with no monetary gain for either Bless or Bartholomew School. The repost also could not plausibly harm the market for Bell's original works or their derivatives; if anything, the use would increase the market. While the Win Passage was copied in its entirety, this factor is offset by the fact that the Win Passage is freely available online. As both the Fifth Circuit and the Eastern District of Wisconsin found, "[i]n both their number and importance, the statutory factors show that the . . . [posts] were fair use." *Milwaukee*, 2022 WL 18276966, at *7 (quoting *Eagle Mountain*, 27 F.4th

13

at 325; and citing *Bell v. Worthington City Sch. Dist.*, No. 2:18-cv-961, 2020 WL 2905803, at \*10–11 (S.D. Ohio June 2, 2020) (finding coach's posting of Win Passage on X fair use)).

Accordingly, because Bartholomew School did not copy Bell's work, his Count II: Direct Copyright Infringement claim fails. Count II also fails against both Bartholomew School and Bless because Bless' reposting of the Win Passage constituted fair use. Bartholomew School's Motion to Dismiss and Bless' Motion for Judgment on the Pleadings are both **granted** as to Count II.

### 2. Count III: Vicarious Copyright Infringement

Bell alleges that Bartholomew School is liable for vicarious copyright infringement. To succeed on this claim, Bell must prove that Bartholomew School had "the right and ability to supervise infringing activity and also has direct financial interest in such activities." *Hard Rock Cafe Licensing Corp. Concession Services, Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992). In support of the first element, the Complaint alleges that Bartholomew School "had the right and ability to supervise and/or control Bless'[s] directly infringing conduct." (Dkt. 1 at 11). Concerning the second element, the Complaint alleges that Bartholomew School "derived a substantial financial benefit from Bless'[s] infringements on [Bell's] [intellectual property]." *Id*.

These threadbare and conclusory allegations are the exact type of allegations *Twombly* describes as being insufficient to support a claim. *See Twombly*, 550 U.S. at 545 ("[A] formulaic recitation of the elements of a cause of action will not do."). The only allegations Bell offers to support this claim is that Bless' personal X account promotes attendance to Bartholomew School football games and therefore Bartholomew School has a financial interest in Bless' posts.

Merely stating that Bartholomew School somehow derives a financial benefit from Bless' own personal X account, without more, need not be accepted as true on a motion to dismiss, *Iqbal*, 556 U.S. at 678, and such conclusory allegations do not plausibly state a claim for vicarious

14

copyright infringement. And even if they did, Bartholomew School is protected by the free use doctrine for the same reasons Bless is.[2] Accordingly, Bartholomew School's Motion to Dismiss is **granted** for Count III: Vicarious Copyright Infringement.

### 3.  Count IV: Digital Millenium Copyright Act ("DMCA") Violation

Bell alleges a violation of 17 U.S.C. § 1202(b) because "Defendant knew or should have known that [Bell's] [intellectual property] was stripped of any notice of copyright, the author's name, surrounding literary text, or other information identifying the work or the author of the work." (Dkt. 1 at 12). Bell does not elaborate on whether this claim is against Bartholomew School or Bless. In his other claims, such as Count II, Bell clarified that it was against "All Defendants," but there is no such identifier on his DMCA claim. Accordingly, his DMCA claim fails for lack of specificity the defendants are entitled to under Federal Rule of Civil Procedure 8. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) ("at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8"); *Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F. Supp. 277, 281 (E.D. Wis. 1975) (granting dismissal where the complaint included "an ambiguous allegation against unidentified 'defendants'").

---

[2] The fair use doctrine states that,

> The fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use; the factors to be considered shall include--
>
> **(1)** the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> **(2)** the nature of the copyrighted work;
> **(3)** the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> **(4)** the effect of the use upon the potential market for or value of the copyrighted work.

*See* Copyright Act, 17 U.S.C. § 107.

15

Nonetheless, the Court need not dismiss Bell's claim on procedural grounds because on the merits, this claim fails. The claim relates to the removal or alteration of copyright information such as Bell's name, surrounding text, and notice of copyright (Dkt. 1 at 12).

The DMCA states, in relevant part,

> (b) **Removal or alteration of copyright management information.**-No person shall, without the authority of the copyright owner or the law—
>
> (1) intentionally remove or alter any copyright management information,
>
> (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
>
> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202.

This claim fails against Bartholomew School because Bell does not allege that Bartholomew School removed copyright information or distributed, imported for distribution, or publicly performed his intellectual property. The Complaint alleges that Bless "controls and maintains the [X] account." (Dkt. 1 at 6). Indeed, Bell failed to make any allegations concerning Bartholomew School's knowledge of the infringing repost, either before or after it occurred. Bell merely alleges in conclusory fashion that Bless reposted Lane Kiffin's original post "in furtherance of his employment by [Bartholomew School]." *Id*. Like Bell's threadbare direct copyright infringement claim against Bartholomew School, these threadbare and conclusory allegations are not enough to support the DMCA claim. *See Twombly*, 550 U.S. at 545. Accordingly, Bartholomew School's Motion to Dismiss is **granted** as to Count IV: DMCA Violation.

Turning to Bell's claim against Bless, the Seventh Circuit has not ruled on whether § 1202(b) has a double scienter requirement. However, the Second Circuit has, *see Mango v. Buzzfeed, Inc.*, 970 F.3d 167, 171 (2d. Cir. 2020), and the Eastern District of Wisconsin, while addressing one of Bell's previous lawsuits, was persuaded by the Second Circuit's reasoning. *See Milwaukee*, 2022 WL 18276966, at *7. The Court agrees with this conclusion.

"The DMCA contains a double scienter requirement, under which the defendant who distributed improperly attributed copyrighted material must have actual knowledge that copyright management information has been removed or altered without authority of the copyright owner or the law, as well as actual or constructive knowledge that such distribution will induce, enable, facilitate, or conceal an infringement." *Id*. (quoting *Mango*, 970 F.3d at 171). Bell does not allege that Bless removed copyright management information. Thus, for Bell to succeed on his claim under Section 1202(b)(3), he must allege facts which it may be plausibly inferred that, when Bless reposted Lane Kiffin's original post, Bless both (1) knew that copyright management information had been removed without authority of the copyright owner or the law, and (2) knew or had reason to know that reposting Lane Kiffin's original post would induce, enable, facilitate, or conceal an infringement. *Id*. Here, Bell's allegations fail against Bless.

Similarly to the allegations made against Bartholomew School, Bell's allegations against Bless merely recite the elements of the DMCA but fail to provide any factual application to Bless. As the Eastern District of Wisconsin found when analyzing identical language in Bell's complaint for a previous lawsuit, "the complaint does little more than parrot the statutory language. The complaint alleges that [defendant] . . . 'had reasonable grounds to know that the distribution would induce, enable, facilitate, or conceal an infringement of rights under the DMCA.'" *Milwaukee*, 2022 WL 18276966, at *8. The Complaint in this action uses identical language. Bell's threadbare

17

recitations failed in many instances above, and they do so here as well. *See Twombly*, 550 U.S. at 545. Accordingly, Bless' Motion for Judgment on the Pleadings is **granted** as to Count IV.

### 4. Count I: Breach of Contract

Bell, without providing the contract to the Court, claims that in the Agreement, Bartholomew School and Bless warranted that "all reproductions, distributions, displays and other uses of [the Book] within their control and custody . . . have ceased and they will desist from further use of [the Book] without first obtaining a written license from Bell." *Id*. Bell alleges that on March 20, 2022, Bartholomew School and Bless breached the above representations in the Agreement "by copying, distributing, and displaying the photo of the Win Passage, reprinted separately from the Book on . . . their social media platform." (Dkt. 1 at 8).

Generally, "[t]o recover for a breach of contract claim under Indiana law, a plaintiff must prove the existence of a contract, breach, and that the plaintiff suffered damage as a result of the breach." *Farah, LLC v. Architura Corp.*, 952 N.E.2d 328, 336 (Ind. Ct. App. 2011). Therefore, Bell must plausibly allege that Bartholomew School and Bless engaged in further "use" of the Book without obtaining a written license, and that he suffered damages because of such use. Bell's claims fail against both Bartholomew School and Bless because there was no "use" here, and even if there was, that use is protected by the free use doctrine.

In addition, Bell does not plausibly allege damages. He merely recites this element of the claim: "Bell has been injured by [Bartholomew School's] and Bless' breach of the [Agreement]. These injuries were natural, probable, and foreseeable consequences of [the] breach." (Dkt. 1 at 8). Bell's formulaic recitation of the elements of this claim with little to no factual application to either Bartholomew School or Bless is insufficient. *See Twombly*, 550 U.S. at 545.

The Court agrees with the Fifth Circuit and the Eastern District of Wisconsin that not only does Bell fail to plausibly allege damages, but such damages do not exist. *See Eagle Mountain*, 27 F.4th at 322 (the post's "only conceivable motivation was to inspire students to strive for success . . . mean[ing] any commercial benefit is implausible."); *see also Milwaukee*, 2022 WL 18276966 at *10 ("The use was entirely noncommercial and could not plausibly harm the market for Bell's original works or their derivatives . . . . It is immensely clear that the re[post] caused no harm to Bell whatsoever and could not possibly deter authors from creating new works.").

Accordingly, Bartholomew School's Motion to Dismiss and Bless' Motion for Judgment on the Pleadings are both **granted** as to Count I: Breach of Contract.

## C.      Attorneys' Fees

In their Motion to Dismiss, Bartholomew School  requests attorneys' fees pursuant to the Copyright Act (Dkt. 26). In his Motion for Judgment on the Pleadings, Bless also requests attorneys' fees pursuant to the Copyright Act (Dkt. 37).

The Copyright Act authorizes the Court "in its discretion" to "allow the recovery of full costs . . . against any party" including "award[ing] a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. A party seeking recovery of attorneys' fees must demonstrate that it is the "prevailing party." *GC2 Inc. v. International Game Technology, IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828, 857 (N.D. Ill. 2019). The Supreme Court and the Seventh Circuit have explained that "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *CRST Van Expedited, inc. v. E.E.O.C.*, 578 U.S. 419, 422 (2016) (internal quotation marks omitted); *see also HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 387 (7th Cir. 2011) (same). If a party demonstrates that they are the prevailing party, the court then considers the nonexclusive factors endorsed by the Supreme Court

19

in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994): "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance consideration of compensation and deterrence." *Id*.; *HyperQuest*, 632 F.3d at 387 (same).

The Supreme Court has identified the objective-reasonableness factor as particularly important because it "encourages parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 205 (2016). "[A] person defending against a patently meritless copyright claim has every incentive to keep fighting, no matter that attorney's fees in a protracted suit might be as or more costly than a settlement." *Id*.

Given the long history of Bell suing over *de minimis* uses of his works and the many patently meritless claims he has brought, *see Eagle Mountain*, 27 F.4th at 326 n.5 (citing cases), in its discretion, the Court finds it appropriate to award fees in this action. "Bell's suit does not in any way further the Act's goals of encouraging authors' creations." *Milwaukee*, 2022 WL 18276966, at *10. Rather, as discussed at length at the beginning of this discussion, Bell's lawsuit is the result of his scouring the internet for any *de minimis* use or harmless reference to the Book or the Win Passage.

As previously noted, courts have found that Bell "is not a typical copyright plaintiff seeking a fair return for his creative labor." *Eagle Mountain*, 27 F.4th at 326 (internal quotation marks and citation omitted). Instead, Bell lies in wait hoping for any harmless reference to his works so that he may file a copyright lawsuit and use such lawsuit as leverage to make "exorbitant demands for damages in hopes of extracting disproportionate settlements." *Id*. In one case, Bell sprang a similar lawsuit on a nonprofit organization serving underprivileged youth. *See Oakland Cmty. Pools*

20

*Project*, 2020 WL 13695114, at \*3, 7 (Stating that Bell's behavior "borders on extortionate," and awarding $120,046.85 in attorneys' fees under the Copyright Act after entering summary judgment against Bell on his copyright claim against a nonprofit serving underprivileged youth). While the Defendants in this action are not similarly vulnerable, they are still deserving of recoupment of their attorneys' fees.

Attorneys' fees have been awarded against Bell in identical cases to this one. *See Milwauke*, 2022 WL 18276966, at \*10; *see also* Order on Motion to Dismiss at 14, *Solon Cmty. Sch. Dist.*, No. 3:24-cv-00083, Dkt. 24. In *Solon*, the Southern District of Iowa concluded that "Bell's pursuit of claims against the school   . . . was objectively unreasonable" as he "sought damages from the [s]chool [d]istrict despite the fact that the alleged infringement occurred on a district employee's personal [X] account" and "Bell offered no basis on which to conclude that the [s]chool [d]istrict should be liable for such conduct on a private social media account." Order on Motion to Dismiss at 14, *Solon Cmty. Sch. Dist.*, No. 3:24-cv-00083, Dkt. 24. This case is no different.

Bell's claims in this case are objectively unreasonable, bordering on extortionate and, as the Fifth Circuit concluded, an award of attorneys' fees in this circumstance is as "an appropriate deterrent." *Eagle Mountain*, 27 F.4th at 326.

Accordingly, Bartholomew School's and Bless' requests for attorneys' fees under the Copyright Act will be **granted**. To quantify the fee award, Bartholomew School and Bless counsel may each file a fee petition in accordance with Federal Rule of Civil Procedure 54(d)(2), within 14 days after the entry of judgment.

### D.    <u>Futility</u>

Bartholomew School asks the Court to dismiss Bell's claims against them with prejudice (Dkt. 26-1 at 22). Bell does not request leave to amend. The usual standard in civil cases is to allow

defective pleadings to be corrected where amendment would not be futile. *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). An amendment is futile when it "merely restates the same facts using different language, or reasserts a claim previously determined;" when it "fails to state a valid theory of liability;" or when it "could not withstand a motion to dismiss." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) (internal quotation marks and citations omitted); *see also McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) ("District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss.") (internal quotation marks and citation omitted).

Given Bell's extensive litigation history, his failure to request leave to amend, his many attempts to refine his copyright claims in courts across the country, and the overall objective unreasonableness of the claims at issue in this case, any amendment would be futile. Accordingly, Bartholomew School's request to dismiss this action with prejudice is **granted**.

## IV.    CONCLUSION

For the reasons explained in this Order, Defendant Bartholomew Consolidated School Corporation's Motion to Dismiss and Motion for Attorneys' Fees (Dkt. 26) is **GRANTED**. Defendant Timothy Bless' Motion for Judgment on the Pleadings and Motion for Attorneys' fees (Dkt. 37) is **GRANTED**. Plaintiff Dr. Keith L. Bell's claims are **dismissed with prejudice**.

To quantify the fee awards, counsel for Bartholomew School and Bless shall each file their fee petitions in accordance with Federal Rule of Civil Procedure 54(d)(2), within 14 days after the entry of judgment. Final judgment shall issue separately.

**SO ORDERED**.

Date:    3/26/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

22

Distribution:

KEITH F. BELL
3101 Mistyglen Circle
Austin, TX 78746

Adam R. Doerr
Kroger Gardis & Regas
adoerr@kgrlaw.com

Tyler John Moorhead
BOSE MCKINNEY & EVANS LLP
tmoorhead@boselaw.com